# LUCAS COUNTY COMMON PLEAS COURT
## CASE DESIGNATION

**TO:** **Bernie Quilter, Clerk of Courts**

**CASE NO.** _____

**JUDGE** _____

G-4801-CI-0202003719-000
**Judge**
**LINDSAY D. NAVARRE**

**The following type of case is being filed:**

**Professional Malpractice**
- [ ] Legal Malpractice (L)
- [ ] Medical Malpractice (M)

- [ ] **Product Liability (B)**
- [ ] **Other Tort** (C)

**Workers' Compensation**
- [ ] State Funded (D)
- [ ] Self Insured (K)

- [ ] **Administrative Appeal (F)**

- [ ] **Commercial Docket**

By submitting the complaint, with the signature of the Attorney, the Attorney affirms that the name of person with settlement authority and his/her direct phone number will be provided upon request to a party or counsel in this matter

**Other Civil**
- [ ] Consumer Fraud (N)
- [ ] Appropriation (P)
- [x] Other Civil (H)
- [ ] Copyright Infringement (W)
- [ ] Forfeiture
- [ ] Court Ordered
- [ ] Certificate of Title

This case was previously dismissed pursuant to CIVIL RULE 41 and is to be assigned to Judge _____, the original Judge at the time of dismissal. The previously filed case number was CI_____.

This case is a civil forfeiture case with a criminal case currently pending. The pending case number is_____, assigned to Judge _____

This case is a Declaratory Judgment case with a personal injury or related case currently pending. The pending case number is_____, assigned to Judge _____

This case is to be reviewed for consolidation in accordance with Local Rule 5.02 as a companion or related case. This designation sheet will be sent by the Clerk of Courts to the newly assigned Judge for review with the Judge who has the companion or related case with the lowest case number. The Judge who would receive the consolidated case may accept or deny consolidation of the case. Both Judges will sign this designation sheet to indicate the action taken. If the Judge with the lowest case number agrees to accept, the reassignment of the case by the Administration Judge shall be processed. If there is a disagreement between the Judges regarding consolidation, the matter may be referred to the Administrative Judge.

Related/companion case number_____ Assigned Judge_____

_____          _____
Approve/Deny                Date       Approve/Deny                Date

**Attorney**      Thomas A. Sobecki
**Address**       405 Madison Avenue, Suite 910
                  Toledo, Ohio 43604
**Telephone**     419-242-9908

**EXHIBIT**
A

F.LED
LUCAS COUNTY.

2020 DEC 15  AM 8: 22

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS



IN THE COMMON PLEAS COURT OF LUCAS COUNTY, OHIO

Krystal Sellers-Kominek
8950 S. River Road
Waterville, Ohio 43566,

Plaintiff,

vs.

City of Maumee
109 E. Dudley Street
Maumee, Ohio 43537,

Defendant.

Case No.

G-4801-CI-0202003719-000
Judge
LINDSAY D. NAVARRE

COMPLAINT; JURY DEMAND
ENDORSED HEREON

Thomas A. Sobecki (0005210)
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Telephone: 419-242-9908
Fax: 419-242-9937
E-mail: tsobecki@tomsobecki.com
Attorney for Plaintiff
     Krystal Sellers-Kominek

1. Plaintiff Krystal Sellers-Kominek ("Sellers") is employed by defendant City of Maumee as a police officer with the rank of Patrolman, assigned to the Department of Public Safety, Division of Police.  Sellers began her employment with the City of Maumee as a police officer on or about March 9, 2016.

2. Sellers' sex is female.

3. During all relevant times Sellers was qualified and continues to be qualified as a police

1

officer for the City of Maumee.

4. Sellers has been and continues to be subjected to different terms and conditions of employment due to her sex and also due to retaliation for having engaged in protected activity.

5. Sellers has been and continues to be subjected to a hostile work environment due to her sex and also due to retaliation for having engaged in protected activity.

6. Sellers engaged in protected activity when she complained of discrimination based on pregnancy to Michael Love ("Love") and David Tullis ("Tullis") approximately in April 2018. Tullis holds the rank of Chief with the City of Maumee, Department of Public Safety, Division of Police. Love holds the rank of Sergeant with the City of Maumee, Department of Public Safety, Division of Police.

7. Sellers engaged in protected activity on or about August 8, 2018, when she submitted a written complaint of discrimination to the City of Maumee, specifically Jeff Siebenaler ("Siebenaler"), who at the time held the rank of Lieutenant with the City of Maumee, Department of Public Safety, Division of Police. A copy of the complaint referenced in this paragraph is attached to this lawsuit Complaint as Exhibit A and incorporated herein.

8. Upon receiving the complaint referenced in paragraph 7 of this lawsuit Complaint, Siebenaler read it and then told Sellers that it would ruin her career if she turned in the complaint just like it did the other female officer who filed one. Siebenaler then gave the complaint back to Sellers. Sellers was intimidated by Siebenaler's action and as a result did not pursue the complaint further.

9. Conduct/incidents set out in Exhibit A and paragraph 8 of this lawsuit Complaint constitute different terms and conditions of employment that Sellers has been subjected to due to her

2

sex.

10. Conduct/incidents set out in Exhibit A and paragraph 8 of this lawsuit Complaint constitute part of the hostile work environment that Sellers has been subjected to due to her sex.

11. The conduct set out in paragraph 8 of this lawsuit Complaint constitutes a different term and condition of employment that Sellers has been subjected to in retaliation for having engaged in protected activity.

12. The conduct set out in paragraph 8 of this lawsuit Complaint constitutes part of the hostile work environment that Sellers has been subjected to in retaliation for having engaged in protected activity.

13. Sellers engaged in protected activity on or about May 22, 2019, when she submitted a written complaint of discrimination to the City of Maumee, specifically Tullis. Tullis read the complaint and then returned it to Sellers, requesting that she address it to Lieutenant Sprow ("Sprow"). Sprow at the time held the position of Lieutenant with the City of Maumee, Department of Public Safety, Division of Police. Sellers at the direction of Tullis addressed the complaint to Sprow and gave it to Sprow. A copy of the complaint referenced in this paragraph is attached to this lawsuit Complaint as Exhibit B and incorporated herein.

14. Conduct/incidents set out in Exhibit B of this lawsuit Complaint constitute different terms and conditions of employment that Sellers has been subjected to due to her sex.

15. Conduct/incidents set out in Exhibit B of this lawsuit Complaint constitute part of the hostile work environment that Sellers has been subjected to due to her sex.

16. Sellers engaged in protected activity on or about July 25, 2019, when she submitted a written complaint of sex discrimination and retaliation to the City of Maumee, specifically Tullis.

3

A copy of the complaint referenced in this paragraph is attached to this lawsuit Complaint as Exhibit C and incorporated herein.

17. Conduct set out in Exhibit C of this lawsuit Complaint constitutes different terms and conditions of employment that Sellers has been subjected to due to her sex.

18. Conduct set out in Exhibit C of this lawsuit Complaint constitutes part of the hostile work environment that Sellers has been subjected to due to her sex.

19. Conduct set out in Exhibit C of this lawsuit Complaint constitutes different terms and conditions of employment that Sellers has been subjected to in retaliation for having engaged in protected activity.

20. Conduct set out in Exhibit C of this lawsuit Complaint constitutes part of the hostile work environment that Sellers has been subjected to in retaliation for having engaged in protected activity.

21. Sellers engaged in protected activity on or about October 4, 2019, when she filed a Charge Of Discrimination against the City of Maumee with the Ohio Civil Rights Commission ("OCRC") and the United States Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge Of Discrimination is attached to this lawsuit Complaint as Exhibit D and incorporated herein. The OCRC closed the case on July 2, 2020 and mailed its Letter Of Determination to the parties on July 30, 2020. A copy of the Letter Of Determination is attached to the lawsuit Complaint as Exhibit E and incorporated herein. The EEOC issued its Notice Of Right To Sue and mailed it to the parties on September 15, 2020. A copy of the Notice Of Right to Sue is attached to this lawsuit Complaint as Exhibit F and incorporated herein.

22. Conduct/incidents set out in Exhibit D of this lawsuit Complaint constitute different

4

terms and conditions of employment that Sellers has been subjected to due to her sex.

23.  Conduct/incidents set out in Exhibit D of this lawsuit Complaint constitute part of the hostile work environment that Sellers has been subjected to due to her sex.

24.  Conduct/incidents set out in Exhibit D of this lawsuit Complaint constitute different terms and conditions of employment that Sellers has been subjected to in retaliation for having engaged in protected activity.

25.  Conduct/incidents set out in Exhibit D of this lawsuit Complaint constitute part of the hostile work environment that Sellers has been subjected to in retaliation for her having engaged in protected activity.

26.  On or about December 12, 2017, Sellers was issued a Verbal Counseling by the City of Maumee.

27.  On or about May 24, 2019, Sellers was issued a Written Reprimand by the City of Maumee, specifically Siebenaler.

28.  On or about October 27, 2019, Sellers was issued a letter of warning by the City of Maumee, specifically Nicholas Foels, who holds the rank of Sergeant with the City of Maumee, Department of Public Safety, Division of Police.

29.  On or about December 12, 2019, Sellers was issued a Written Reprimand by the City of Maumee, specifically Paul LaPlante, who holds the rank of Sergeant with the City of Maumee, Department of Public Safety, Division of Police.

30.  On or about May 29, 2020, Sellers received a Verbal Counseling by the City of Maumee, specifically Andrew Pollauf ("Pollauf") who holds the rank of Sergeant with the City of Maumee, Department of Public Safety, Division of Police.

31. On or about June 18, 2020, Sellers received a Verbal Counseling by the City of Maumee, specifically Pollauf.

32. On or about July 20, 2020, Sellers received a Verbal Counseling by the City of Maumee, specifically LaPlante.

33. On or about August 31, 2020, Sellers was issued a Written Reprimand for Gross Incompetence by the City of Maumee, specifically Polluaf.

34. On or about September 11, 2020, the City of Maumee, specifically Siebenaler, moved Sellers from the third shift to the second shift. This was done without Sellers' consent or approval. This shift change has caused considerable hardship to Sellers on a personal level regarding care for her minor children as well as loss of family income. Sellers is scheduled to return to third shift on or about January 3, 2021.

35. On or about October 19, 2020, Sellers requested the City of Maumee to remove a letter of reprimand that was placed in her personnel file on October 21, 2018. On or about October 21, 2020, the City of Maumee, specifically David Busick, Interim Law Director for the City of Maumee, denied her request.

36. On or about November 9, 2020, the City of Maumee, specifically Siebenaler, required Sellers to attend an internal investigation meeting involving her conduct.

37. On or about November 24, 2020, the City of Maumee, specifically Tullis, placed Sellers on involuntary paid administrative leave. At the time Sellers was required to turn in her gun, gun belt, radio, vest, badges, as well as her key card to the City of Maumee, Department of Public Safety, Division of Police building. She was escorted out of the police building by Love. Sellers was locked out of her official City of Maumee email account as well as the Precinct Manager software which

6

is available to all active City of Maumee police officers.

38. On November 25, 2020, Sellers was required to attend a pre-disciplinary hearing.

39. On or about November 28, 2020, Sellers was required to turn in all her uniforms as well as her keys to the police building.

40. On or about December 11, 2020, Sellers was placed on a ten-day unpaid suspension by the City of Maumee, specifically Tullis. The suspension began on December 12, 2020, and is scheduled to expire on December 26, 2020. This is the first time Sellers has been suspended by the City of Maumee.

41. At the time Tullis placed Sellers on the ten-day suspension, he informed Sellers that she will be placed on a Performance Improvement Plan upon the expiration of her suspension.

42. The conduct/matters set out in paragraphs 26 through 41 of this lawsuit Complaint constitute different terms and conditions of employment that Sellers has been subjected to due to her gender.

43. The conduct/matters set out in paragraphs 26 through 41 of this lawsuit Complaint constitute part of the hostile work environment that Sellers has been subjected to due to her gender.

44. The conduct/matters set out in paragraphs 26 through 41 of this lawsuit Complaint constitute different terms and conditions of employment that Sellers has been subjected to in retaliation for her having engaged in protected activity.

45. The conduct/matters set out in paragraph 26 through 41 of this lawsuit Complaint constitute part of the hostile work environment that Sellers has been subjected to in retaliation for her having engaged in protected activity.

46. Sellers suffered and continues to suffer lost wages and benefits as a result of the City of

7

Maumee's conduct and acts as set out in this lawsuit Complaint.

47. Sellers suffered and continues to suffer emotional distress, suffering, inconvenience, and mental anguish, as a result of the City of Maumee's conduct and acts as set out in this lawsuit Complaint.

48. The harassment based on sex unreasonably interfered with Sellers' work performance and was severe and pervasive.

49. The harassment based on sex was unwelcome.

50. The City of Maumee knew or should have known of the harassment and failed unreasonably to take prompt and appropriate corrective action.

COUNT I
OHIO REVISED CODE
§ 4112.99
SEX DISCRIMINATION

51. Sellers repeats, reiterates and realleges all allegations contained in paragraphs 1 through 50 of this lawsuit Complaint as if more fully set out herein.

COUNT II
OHIO REVISED CODE
§ 4112.99
RETALIATION

52. Sellers repeats, reiterates and realleges all allegations contained in paragraphs 1 through 51 of this lawsuit Complaint as if more fully set out herein.

COUNT III
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. §§ 2000e ET SEQ.
SEX DISCRIMINATION

53. Sellers repeats, reiterates and realleges all allegations contained in paragraphs 1 through

8

52 of this lawsuit Complaint as if more fully set out herein.

COUNT IV
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. §§ 2000e ET SEQ.
RETALIATION

54. Sellers repeats, reiterates and realleges all allegations contained in paragraphs 1 through

53 of this lawsuit Complaint as if more fully set out herein.

WHEREFORE, Sellers prays for judgment against the City of Maumee as follows:

1. As to Counts 1 and 2, as to each count,

A. Expungement of negative records;

B. Full back pay;

C.  Compensatory damages in an amount in excess of $25,000.00;

D. Attorney's fees;

E. Prejudgment interest, post-judgment interest, costs, and expenses; and

F. Such other and further relief as this Court deems just and proper.

2. As to Counts 3 and 4, as to each count,

A. Expungement of negative records;

B. Full back pay;

C. Compensatory damages in the maximum amount allowed by law;

D. Attorney's fees;

E. Prejudgment interest, post-judgment interest, costs, and expenses; and

F. Such other and further relief as this Court deems just and proper.

9

Respectfully submitted,

Thomas A. Sobecki (0005210)
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Telephone: 419-242-9908
Fax: 419-242-9937
E-mail: tsobecki@tomsobecki.com
Attorney for Plaintiff
    Krystal Sellers-Kominek

## JURY DEMAND

Sellers demands a trial by jury as to all counts.

Thomas A. Sobecki
Attorney for Plaintiff
    Krystal Sellers-Kominek

10

August 8, 2018

Lt. Siebenaler,

      It has been brought to my attention that Ptl. LaPlante 172 was going to other officers and speaking in a disparaging manner in regards to me. In a manner that would affect their respect, courtesy and professionalism with their dealings with me.

      While I was on leave I knew I was going to have to work myself up to speed. I studied the General Orders, my FTO book, studied at home, I was aware that some laws and some General Orders changed and studied up on them. I rode in the patrol vehicle with Sgt. Love. I do realize I'm not at 100% performance level yet, but I'm continuing to work hard to get myself up to 100%.

      I would like this issue looked into and I would like Ptl. LaPlante not to discuss his opinion about me to my peers. I do not want this to affect my consideration with future assignments such as FTO, Detective Bureau, Training or Sgt.

      Sgt. Love mentioned I was doing much better, retaining information and noticed my confidence is up.

Respectfully,

Ptl. Sellers 130

I have attached my stats after coming back from leave, a copy of the General Order G218-03 that I believe Ptl. LaPlante is in violation of and examples of negative behavior by Ptl. LaPlante.

CC: Union

EXHIBIT

A

Examples of Negative Behavior:

> February 26, 2018 – Report #18005640
>   o  I went to the traffic stop, came back to the station to pat the females down again to double check for weapons or drugs.
>   o  I asked Ptl. Bakhsh if he wanted any help with logging the property, he advised no we got it.
>   o  I was then called into the Sgt. Office to talk with Sgt. Foels and Sgt. Love about the property issue.  They were told that I said "I was not helping and walked out and went back on the road." Sgt. Foels advised this time it will not go to IA.
>   o  That night I had intern Dallas with me and he was up in the interview room with me. Everything should have been recorded, asking if they needed any help.

> June 26, 2018 Report #18017008
>   o  Paul responded to a suspicious motor vehicle, I went on the radio and asked if he was all set.  He completely ignored me.  I asked other officers if it went over the air and they advised it did.
> I feel like I'm being singled out by Ptl. LaPlante which is affecting my job performance and making it feel like a hostile work environment.
> I come to work all stressed out when I work my two day with Paul or especially when he is acting Sgt.
> He very rarely backs me up on VTO's if he is in the area. Which I believe is an officer safety issue.
> He has on one or more occasions constantly calls on me and quizzes me on my knowledge about laws, or procedures during roll call in front of my peers.
> He has mentioned in front of my peers not to stop for open garage doors and not to contact home-owners to advise, they left the garage door open.
>   o  I believe that being in the neighborhoods and keeping an eye on people's property is very good community policing.
> I have been told by Ptl. Lohner that Ptl. LaPlante has talked about my job performance on multiple occasions.
> Before I left for my pregnancy leave Ptl. LaPlante and I got along fine with no issues.  When I came back from leave I felt animosity and tension in roll call and the only reason I can think of is because of my extended leave.
> I am aware of a conversation between Ptl. LaPlante and Ptl. Corado it was sent in a text message from Corado: "This isn't a quote but essentially he said that I should watch out who I spend time with at work because if they are bad officers people will assume I'm also a bad officer. He said it doesn't make it right but that's what happens on this department and eventually it will burn bridges with people and they won't want to help me anymore.  And then we talked about how the department will eventually get rid of you if you don't show that you're learning things."

I would like the department to investigate Ptl. LaPlante, about any violations of policy and procedures, to quit discussing my work performance with fellow officers.  If Ptl. LaPlante has any grievances or problems with me he needs to bring it to me directly.



# Officer Activity By Date

Starting Date 01/01/2018    Ending Date 08/07/2018

| Officer | NIBRSSuspect ArrestTotal | Arrest | Crash | Domestic Violence | Field Interview | Ncr | Nibrs | Parking Ticket | Summons | Traffic Ticket | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Secretary Babka, Kathy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 1 | 5 |
| Ptl. Fritz, Bryan | 106 | 0 | 22 | 6 | 52 | 0 | 127 | 3 | 0 | 177 | 493 |
| Ptl. Bakhsh, Sean | 70 | 0 | 4 | 5 | 65 | 0 | 67 | 0 | 0 | 133 | 344 |
| Ptl. Sellers, Krystal | 20 | 0 | 6 | 1 | 47 | 0 | 29 | 1 | 0 | 67 | 171 |
| Ptl. Henson, Cory | 18 | 0 | 13 | 2 | 30 | 0 | 23 | 3 | 0 | 80 | 169 |
| Ptl. Hoover,Caroline M | 68 | 0 | 10 | 5 | 41 | 0 | 83 | 2 | 0 | 89 | 298 |
| Ptl. Brewer, Travis | 35 | 0 | 5 | 1 | 41 | 0 | 37 | 0 | 0 | 83 | 202 |
| Ptl. Neitzel, Luke J | 9 | 0 | 13 | 2 | 15 | 0 | 20 | 5 | 0 | 44 | 108 |
| Ptl. Pollock, William | 24 | 0 | 6 | 4 | 31 | 0 | 28 | 1 | 0 | 48 | 142 |
| Det. Pollauf, Andrew R. | 8 | 0 | 0 | 0 | 1 | 0 | 10 | 0 | 0 | 2 | 21 |
| Ptl. Kuhlman, Gregory L. | 2 | 0 | 25 | 3 | 26 | 0 | 36 | 0 | 0 | 79 | 171 |
| Ptl. King, Andrew | 34 | 0 | 18 | 5 | 35 | 0 | 59 | 1 | 0 | 81 | 233 |
| Ptl. Beck, Jacob | 37 | 0 | 12 | 6 | 28 | 0 | 46 | 13 | 0 | 59 | 201 |
| Ptl. Sullivan, Patrick J. | 7 | 0 | 15 | 0 | 21 | 0 | 25 | 1 | 0 | 19 | 88 |
| Sgt. Hixon, Thomas M. | 6 | 0 | 0 | 2 | 7 | 0 | 7 | 3 | 0 | 53 | 78 |
| Ptl. Cody Corado | 43 | 0 | 17 | 3 | 62 | 0 | 75 | 0 | 0 | 114 | 314 |
| Ptl. Newsome, Wendy L | 0 | 0 | 0 | 0 | 8 | 0 | 1 | 0 | 0 | 0 | 9 |
| Sgt. Crowe, Stephen | 6 | 0 | 1 | 0 | 15 | 0 | 11 | 0 | 0 | 24 | 57 |
| Ptl. Kline, Roger D. | 8 | 0 | 25 | 1 | 31 | 0 | 30 | 2 | 0 | 54 | 151 |
| Ptl. Mock, Brian W. | 9 | 0 | 5 | 1 | 20 | 0 | 17 | 15 | 0 | 11 | 78 |

8/7/2018    3:15AM



| | ISSUE DATE | EXPIRATION DATE | NUMBER |
|---|---|---|---|
| GENERAL ORDER | 071118 | NONE | G2018-03 |

| SUBJECT |
|---|
| STANDARDS OF CONDUCT |

| REFERENCES | AMENDS | RESCINDS |
|---|---|---|

## I.  PURPOSE

The purpose of this General Order is to provide specificity to the standards of conduct embodied in the law enforcement officer's code of ethics and this Division's statement of values and mission, so that officers have a clear understanding of Division expectations pertaining to conduct and activities while on and off duty.

## II.  POLICY

It is the policy of this Division that officers conduct themselves both on and off duty in a manner that reflects high ethical standards consistent with the values and mission established by this Division and the expectations of the community it serves.

## III.  DEFINITIONS

A.  Accountability – The duty of all officers to truthfully acknowledge and explain their actions and decisions when requested to do so by an authorized member of this Division without attempting to conceal, divert, or mitigate any culpability by falsehoods or omission – and an obligation or willingness to accept responsibility for such actions.

## IV.  PROCEDURE

A.  General Conduct

1.  Officers shall be truthful in all matters and shall not lie, falsify, conceal, purposely distort, diminish, embellish, or fail to fully disclose facts associated with any law enforcement business.

2.  Adherence to Laws, Regulations, and Orders

   a.  Officers shall abide by all laws, regulations, Division policies, rules, and procedures.

   b.  Officers shall obey all lawful orders.

   c.  Officers who are arrested, cited, or come under investigation for any offense in any jurisdiction shall immediately report this fact to their supervisor.

3.  Conduct Unbecoming an Officer

   a.  Officers shall not conduct themselves in a manner, on or off duty, that

      1)  Casts doubt on their integrity, honesty, judgment, or character

      2)  Brings discredit to this Division

      3) Impairs the Division's efficient and effective operation

4. Neglect of Duty .

   a. All officers shall perform their duties faithfully and diligently and shall take responsibility for and exhibit attentiveness, care, and thoroughness in the conduct of assignments and responsibilities.

   b. Officers shall conduct themselves in an expeditious manner to avoid any unreasonable delays to the public in the performance of law enforcement duties and activities.

5. Accountability and Responsibility

   a. Officers are directly accountable for their actions, through the chain of command, to this Division's Chief of Police.

   b. Officers shall report for duty, including court and off-duty assignments, at the time and place required.

   c. Officers have a duty to intervene to prevent or stop wrongdoing by another officer when it is safe and reasonable to do so.

     1) A supervisor shall be notified as soon as possible when another member of the agency is violating law or policy.

   d. Officers shall cooperate fully in any internal administrative investigation conducted by this or any other authorized agency and shall not attempt to conceal, divert, or mitigate any culpability of theirs by falsehoods or omissions.

   e. Officers shall utilize Division supplies, property, and equipment only for their official purpose and in accordance with established Division rules, policies, and procedures and shall not intentionally abuse, lose, or damage these items.

6. Conduct Toward Fellow Officers

   a. Officers shall conduct themselves in a manner that fosters cooperation among members of this Division, showing respect, courtesy, and professionalism in their dealings with each other.

   b. Officers shall not use language or engage in acts that demean, harass, or intimidate other officers.

7. Conduct Toward the Public

   a. Officers shall treat individuals with courtesy, respect, and dignity.

   b. Officers shall not employ an officious or overbearing attitude or use language that might belittle, ridicule, or intimidate individuals.

   c. Officers shall perform their duties equitably in both the enforcement of laws and the delivery of law enforcement services within the community and shall strive to maintain public trust by conducting all law enforcement business in an unbiased, fair, and impartial manner.

8. Abuse of Law Enforcement Authority of Position.

   a. Officers may not accept goods, services, or discounts of value not available to the general public and shall report any unsolicited goods or services they receive and the circumstances of the receipt.

   b. Officers shall not use their authority or position

     1). For financial gain

May 22, 2019

Lt. Sprow,

Since I have returned from my leave, I have been treated unfairly and discriminated against by Sgt. LaPlante (and when he was a patrolman).

Below is an outline of events which will substantiate these claims:

1. 7/20/18 - Report #18019565 - I assisted Ptl. Brewer with an OVI crash. I transported Ptl. Brewer's OVI arrest to LCJ. After I advised Ptl. LaPlante of LCJ's Policy that the arrestee needed clearance papers from St. Luke's. Ptl. LaPlante ordered me not to tell LCJ he was not in an accident. *Per Lt. Chromik it is LCJ's Policy that we will not accept anyone who has been in an auto accident they need clearance paper work from a local hospital.

2. 10/12/18 - Report #18027704 - Ptl. LaPlante advised I had an officer safety issue on the traffic stop. Sgt. Love reviewed the video and advised there were no officer safety issues. I asked Ptl. LaPlante a question about the incident in roll call in front of Sgt. Love. Ptl. LaPlante advised, Stay away from me I'm done with you. You are harassing me.

3. 10/13/18 - Report #18027766 - Ptl. LaPlante called Sgt. Love and advised LCJ was pissed off because I missed drugs that were located on the female. I patted down the female and only located drugs in her shoe. I did not find any other drugs on her person. * After my conversation with Sgt. Love, I called LCJ booking and spoke with Sgt. McNett. He advised they were not mad and there was not an issue. I notified Sgt. Love about the conversation between Sgt. McNett and I.

4. 5/10/19 - Report #19011921 - Sgt. LaPlante advised I violated the suspects civil rights, I may get sued and it was a bad stop. He advised I should of waited a while before stopping out with the vehicle or got driving on him. The driver of the vehicle had a BAC of .246. (Please review video, audio and report)

5. 5/11/19 - Report# 19012051 - I was brought into the Sergeants office multiple times to go over this call. He advised I was out at this address for seven minutes, he pulled my GPS and kept questioning me on my report. I felt as if he was trying to test my integrity. I know for a fact that our GPS times are not correct and there is a lng time with dispatch. He advised I said 30 seconds. I'm sure I said 3 minutes, then he advised I told him 2 seconds. I have been threatened two times to get wrote up over this call. I was just doing my job and checking the safety of the individual and make sure no violence or crime occurred. * I know the GPS times are wrong, because Lt. Siebenaler ordered me to tell him if a certain officer was a location for a long period of time on a daily basis. He advised when he pulls the GPS times up they are not correct.

PENGAD 800-631-6989

EXHIBIT

B

1

6. Sgt. LaPlante compared me to Ptl. Roberts who is taller and bigger than me. He advised I have two things coming at me and it's harder for me to gain peoples respect because I'M A FEMALE AND SMALL. * This obvious sexual discrimination was unnecessary and served no purpose. I have no documented cases of an individual not respecting me because of my sex, age or physical make-up.

7. May 2019 - Sgt. LaPlante advised in roll call that we no longer have discretion with roaches, blunts and marijuana. We are no longer able to get rid of it in front of the camera or by using the wind test. We have to charge the individual or just leave the roaches, blunts, marijuana and advise them to clean out their vehicle. If it is a small roach or small amount of marijuana it may not be able to get tested twice like it's supposed to. I hold myself to a high ethical and moral standard, and under Ohio Law, any amount of marijuana is illegal and citable and/or arrestable.

2

Sgt. LaPlante has displayed a pattern of behavior. For example:

**\*\*When Chief Tullis was Acting Chief he came in on 3rd shift and had a sit down meeting with us. He advised this needed to end and he was not putting up with it. \*\***

- Sgt. LaPlante is pushing the entire shift against me.

+ While Ptl. Pollock was acting Sgt. I received a text message "You've been warned by sergeant's about being so far from you sector during prime hours." I made the loop around the city like everyone else does and was on River Rd. near the river.

- It appears that I only have rules to stay in my sector, like I'm violating a direct order if I leave my sector. I like to patrol the entire city not just my sector, incidents/crime occur throughout the entire city. I have been warned to stay in my sector during prime hours and to my knowledge no one else has.
- I'm being singled out and treated like I'm incompetent. Despite there being no documentation to support this claim.
- To my knowledge, no other officer's GPS unites are being pulled.
- Ptl. Lohner advised he was not going to be on 3rd shift forever and will soon be going to 1st shift. I was advised by Ptl. Lohner to document any call or incident with Ptl. LaPlante, because he is out to get me.
- I'm under a microscope for every little thing I do or say.
- I've been advised to leave suspicious motor vehicles alone.
- I have been accused of lying, which is a serious accusation to make against a police officer. For lying on my reports and lying about what happened on a call. I have worked in law enforcement for almost seven years and have never lied before and I'm not going to start all of a sudden in the last couple weeks like I was accused of.
- He made the comment once to me if I ever go at him with paper he will bury my ass.
- Some officers in the department and Sergeants are aware of the issues that have been going on since I have returned back to the road.
- The attached formal complaint was the first one I wrote. The complaint would been submitted on August 8, 2018, but I was advised by Lt. Siebenaler; if I turned the complaint in it would ruin my career like the other female officer who filed one.

3

I continue to be active on the road with writing citations, making warrant arrest, being proactive and working in my sector.

Please accept this document as a formal complaint on Sgt. LaPlante for blatant violations of policy, procedures, harassment, hostile work environment and EEOC violations.

***<u>This is my second attempt to get this behavior to stop and if there is no immediate results then I will confer with my attorney. I have no other options at this point.</u> ***

Respectfully,

Ptl. Sellers 130

4

August 8, 2018

Lt. Siebenaler,

It has been brought to my attention that Ptl. LaPlante 172 was going to other officers and speaking in a disparaging manner in regards to me. In a manner that would affect their respect, courtesy and professionalism with their dealings with me.

While I was on leave I knew I was going to have to work myself up to speed. I studied the General Orders, my FTO book, studied at home, I was aware that some laws and some General Orders changed and studied up on them. I rode in the patrol vehicle with Sgt. Love. I do realize I'm not at 100% performance level yet, but I'm continuing to work hard to get myself up to 100%.

I would like this issue looked into and I would like Ptl. LaPlante not to discuss his opinion about me to my peers. I do not want this to affect my consideration with future assignments such as FTO, Detective Bureau, Training or Sgt.

Sgt. Love mentioned I was doing much better, retaining information and noticed my confidence is up.

Respectfully,

Ptl. Sellers 130

I have attached my stats after coming back from leave, a copy of the General Order G218-03 that I believe Ptl. LaPlante is in violation of and examples of negative behavior by Ptl. LaPlante.

CC: Union

Examples of Negative Behavior:

> February 26, 2018 – Report #18005640
   o I went to the traffic stop, came back to the station to pat the females down again to double check for weapons or drugs.
   o I asked Ptl. Bakhsh if he wanted any help with logging the property, he advised no we got it.
   o I was then called into the Sgt. Office to talk with Sgt. Foels and Sgt. Love about the property issue. They were told that I said "I was not helping and walked out and went back on the road." Sgt. Foels advised this time it will not go to IA.
   o That night I had intern Dallas with me and he was up in the interview room with me. Everything should have been recorded, asking if they needed any help.

> June 26, 2018 Report #18017008
   o Paul responded to a suspicious motor vehicle, I went on the radio and asked if he was all set. He completely ignored me. I asked other officers if it went over the air and they advised it did.

> I feel like I'm being singled out by Ptl. LaPlante which is affecting my job performance and making it feel like a hostile work environment.
> I come to work all stressed out when I work my two day with Paul or especially when he is acting Sgt.
> He very rarely backs me up on VTO's if he is in the area. Which I believe is an officer safety issue.
> He has on one or more occasions constantly calls on me and quizzes me on my knowledge about laws, or procedures during roll call in front of my peers.
> He has mentioned in front of my peers not to stop for open garage doors and not to contact home owners to advise, they left the garage door open.
   o I believe that being in the neighborhoods and keeping an eye on people's property is very good community policing.
> I have been told by Ptl. Lohner that Ptl. LaPlante has talked about my job performance on multiple occasions.
> Before I left for my pregnancy leave Ptl. LaPlante and I got along fine with no issues. When I came back from leave I felt animosity and tension in roll call and the only reason I can think of is because of my extended leave.
> I am aware of a conversation between Ptl. LaPlante and Ptl. Corado it was sent in a text message from Corado: "This isn't a quote but essentially he said that I should watch out who I spend time with at work because if they are bad officers people will assume I'm also a bad officer. He said it doesn't make it right but that's what happens on this department and eventually it will burn bridges with people and they won't want to help me anymore. And then we talked about how the department will eventually get rid of you if you don't show that you're learning things."

I would like the department to investigate Ptl. LaPlante, about any violations of policy and procedures, to quit discussing my work performance with fellow officers. If Ptl. LaPlante has any grievances or problems with me he needs to bring it to me directly.



# Officer Activity By Date

Starting Date 01/01/2018     Ending Date 08/07/2018

| Officer | NIBRSSuspect ArrestTotal | Arrest | Crash | Domestic Violence | Field Interview | Ncr | Nibrs | Parking Ticket | Summons | Traffic Ticket | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Secretary Babka, Kathy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 1 | 5 |
| Ptl. Fritz, Bryan | 106 | 0 | 22 | 6 | 52 | 0 | 127 | 3 | 0 | 177 | 493 |
| Ptl. Bakhsh, Sean | 70 | 0 | 4 | 5 | 65 | 0 | 67 | 0 | 0 | 133 | 344 |
| Ptl. Sellers, Krystal | 20 | 0 | 6 | 1 | 47 | 0 | 29 | 1 | 0 | 67 | 171 |
| Ptl. Henson, Cory | 18 | 0 | 13 | 2 | 30 | 0 | 23 | 3 | 0 | 80 | 169 |
| Ptl. Hoover, Caroline M | 68 | 0 | 10 | 5 | 41 | 0 | 83 | 2 | 0 | 89 | 298 |
| Ptl. Brewer, Travis | 35 | 0 | 5 | 1 | 41 | 0 | 37 | 0 | 0 | 83 | 202 |
| Ptl. Neitzel, Luke J | 9 | 0 | 13 | 2 | 15 | 0 | 20 | 5 | 0 | 44 | 108 |
| Ptl. Pollock, William | 24 | 0 | 6 | 4 | 31 | 0 | 28 | 1 | 0 | 48 | 142 |
| Det. Pollauf, Andrew R. | 8 | 0 | 0 | 0 | 1 | 0 | 10 | 0 | 0 | 2 | 21 |
| Ptl. Kuhlman, Gregory L | 2 | 0 | 25 | 3 | 26 | 0 | 36 | 0 | 0 | 79 | 171 |
| Ptl. King, Andrew | 34 | 0 | 18 | 5 | 35 | 0 | 59 | 1 | 0 | 81 | 233 |
| Ptl. Beck, Jacob | 37 | 0 | 12 | 6 | 28 | 0 | 46 | 13 | 0 | 59 | 201 |
| Ptl. Sullivan, Patrick J. | 7 | 0 | 15 | 0 | 21 | 0 | 25 | 1 | 0 | 19 | 88 |
| Sgt. Hixon, Thomas M. | 6 | 0 | 0 | 2 | 7 | 0 | 7 | 3 | 0 | 53 | 78 |
| Ptl. Cody Corado | 43 | 0 | 17 | 3 | 62 | 0 | 75 | 0 | 0 | 114 | 314 |
| Ptl. Newsome, Wendy L | 0 | 0 | 0 | 0 | 8 | 0 | 1 | 0 | 0 | 0 | 9 |
| Sgt. Crowe, Stephen | 6 | 0 | 1 | 0 | 15 | 0 | 11 | 0 | 0 | 24 | 57 |
| Ptl. Kline, Roger D. | 8 | 0 | 25 | 1 | 31 | 0 | 30 | 2 | 0 | 54 | 151 |
| Ptl. Mock, Brian W. | 9 | 0 | 5 | 1 | 20 | 0 | 17 | 15 | 0 | 11 | 78 |

8/7/2018     3:15AM



| | ISSUE DATE | EXPIRATION DATE | NUMBER |
|---|---|---|---|
| GENERAL ORDER | 071118 | NONE | G2018-03 |

**SUBJECT**

STANDARDS OF CONDUCT

| REFERENCES | AMENDS | RESCINDS |
|---|---|---|

## I.  PURPOSE

The purpose of this General Order is to provide specificity to the standards of conduct embodied in the law enforcement officer's code of ethics and this Division's statement of values and mission, so that officers have a clear understanding of Division expectations pertaining to conduct and activities while on and off duty.

## II.  POLICY

It is the policy of this Division that officers conduct themselves both on and off duty in a manner that reflects high ethical standards consistent with the values and mission established by this Division and the expectations of the community it serves.

## III.  DEFINITIONS

A.  Accountability – The duty of all officers to truthfully acknowledge and explain their actions and decisions when requested to do so by an authorized member of this Division without attempting to conceal, divert, or mitigate any culpability by falsehoods or omission – and an obligation or willingness to accept responsibility for such actions.

## IV.  PROCEDURE

A.  General Conduct

1.  Officers shall be truthful in all matters and shall not lie, falsify, conceal, purposely distort, diminish, embellish, or fail to fully disclose facts associated with any law enforcement business.

2.  Adherence to Laws, Regulations, and Orders

  a.  Officers shall abide by all laws, regulations, Division policies, rules, and procedures.

  b.  Officers shall obey all lawful orders.

  c.  Officers who are arrested, cited, or come under investigation for any offense in any jurisdiction shall immediately report this fact to their supervisor.

3.  Conduct Unbecoming an Officer

  a.  Officers shall not conduct themselves in a manner, on or off duty, that

  1)  Casts doubt on their integrity, honesty, judgment, or character

  2)  Brings discredit to this Division

3) Impairs the Division's efficient and effective operation.

4. Neglect of Duty

    a. All officers shall perform their duties faithfully and diligently and shall take responsibility for and exhibit attentiveness, care, and thoroughness in the conduct of assignments and responsibilities.

    b. Officers shall conduct themselves in an expeditious manner to avoid any unreasonable delays to the public in the performance of law enforcement duties and activities.

5. Accountability and Responsibility

    a. Officers are directly accountable for their actions, through the chain of command, to this Division's Chief of Police.

    b. Officers shall report for duty, including court and off-duty assignments, at the time and place required.

    c. Officers have a duty to intervene to prevent or stop wrongdoing by another officer when it is safe and reasonable to do so.

        1) A supervisor shall be notified as soon as possible when another member of the agency is violating law or policy.

    d. Officers shall cooperate fully in any internal administrative investigation conducted by this or any other authorized agency and shall not attempt to conceal, divert, or mitigate any culpability of theirs by falsehoods or omissions.

    e. Officers shall utilize Division supplies, property, and equipment only for their official purpose and in accordance with established Division rules, policies, and procedures and shall not intentionally abuse, lose, or damage these items.

6. Conduct Toward Fellow Officers

    a. Officers shall conduct themselves in a manner that fosters cooperation among members of this Division, showing respect, courtesy, and professionalism in their dealings with each other.

    b. Officers shall not use language or engage in acts that demean, harass, or intimidate other officers.

7. Conduct Toward the Public

    a. Officers shall treat individuals with courtesy, respect, and dignity.

    b. Officers shall not employ an officious or overbearing attitude or use language that might belittle, ridicule, or intimidate individuals.

    c. Officers shall perform their duties equitably in both the enforcement of laws and the delivery of law enforcement services within the community and shall strive to maintain public trust by conducting all law enforcement business in an unbiased, fair, and impartial manner.

8. Abuse of Law Enforcement Authority of Position.

    a. Officers may not accept goods, services, or discounts of value not available to the general public and shall report any unsolicited goods or services they receive and the circumstances of the receipt.

    b. Officers shall not use their authority or position

        1) For financial gain

July 25, 2019

Chief Tullis,

I believe the investigation into my complaint of sexual discrimination has been going on a long time and I'm not getting the right answers. I believe this investigation has been biased from the start because of my conversation with Lt. Sprow when he defended Sgt. LaPlante. I'm required to discuss minor issues on the road with Lt. Sprow feels like a punishment.

I also believe it is continued sexual discrimination because the male officers do not need to talk with Lt. Sprow regarding minor issues on the road. I feel like I'm being retaliated against for filing the complaint.

It feels like there is a microscope hanging over my head, when being asked over the radio or the cad to meet 180 in his office.

Respectfully,

*Krystal Sellers 130*

Ptl. Sellers 130



**OHIO CIVIL RIGHTS COMMISSION**
**CHARGE OF DISCRIMINATION**
**EMPLOYMENT**

| Agency Use Only | CHARGE NUMBER: (Agency Use Only) |
|---|---|
| ☒ FEPA | TOL72(40150)10042019 |
| ☒ EEOC | 22A-2020-00051C |

Completely Fill in the Following

| | |
|---|---|
| Krystal Sellers- Kominek | City of Maumee - Maumee Police Division |
| Name of Charging Party (First Middle Last) | Name of Company |
| 8950 S. River Rd. | 109 E. Dudley St. |
| Address | Address |
| Waterville    OH    43566    Lucas | Maumee    OH    43537    Lucas |
| City         State   Zip Code   County | City         State   Zip Code   County |
| 419-340-6674 | 419-897-7040 |
| Telephone Number | Telephone Number |
| Prior to September 14, 2019 and continuing | +15                         March 9, 2016 |
| Date(s) of Discrimination | Total Number of Employees    Date of Hire |

I believe I was discriminated against because of my: (Please identify)

☐ Race/Color _____

☒ Sex Female _____

☐ Disability _____

☐ Military Status _____

☐ Age (Over 40 years old only - List Date of Birth) _____

☐ Religion _____

☐ National Origin/Ancestry _____

☒ Retaliation Filed Internal Complaint

FOR AGE CASES ONLY: I have not commenced any action under sections 4112.14 or 4112.02(N), Revised Code with respect to the subject matter of the affidavit. I understand that upon filing of this charge with the Ohio Civil Rights Commission, I am barred from instituting any such civil action and that any monetary award or financial benefit I may receive may be limited to back pay and/or restoration of employment fringe benefits and may not include other damages to which I may be entitled as a result of such civil action.

**Type of Discrimination:**

☐ Demotion

☐ Failure to Hire

☐ Layoff

☐ Other (Specify) _____

☐ Discharge/Termination

☐ Forced to Resign

☐ Promotion

☒ Discipline

☒ Harassment/Sexual Harassment

☐ Reasonable Accommodation

Please write a brief but detailed statement of the facts that you believe indicate an unlawful discriminatory practice. Please write legibly.

1. I am a person who previously participated in protected activity. I am a female. I have been employed by Respondent since March 9, 2016, most recently as a Patrolman. Prior to September 14, 2019 and continuing, I was retaliated against, disciplined and subjected to harassment.

2. Respondent has given me no legitimate reason for its actions against me.

3. I have been unlawfully discriminated against because of being harassed due to my sex because:
   a. I am subjected to harassment by Paul LaPlonte. Paul has said to me you're small and a female. You're going to have trouble gaining respect. Paul closely scrutinize my work; he pulls all my videos from traffic stops, verbally test me during roll call and ignores me, among other things.

   b. Respondent knew of the harassment because I reported it to Lt. Siebenaler, Lt. Sprow and Chief Tullis. Respondent failed to take prompt remedial action.

   c. Respondent acted unreasonably under the circumstances because I was disciplined on September 14, 2019.

continue on page 2

RECEIVED
OCT 04 2019

EXHIBIT
D
PENGAD 800-631-6989

I declare under penalty of perjury that I have read the above charge and that it is true to the best of my knowledge, information and belief. I will advise the agency(ies) if I change my address or telephone number and that I will cooperate fully with them in the processing of my charge in accordance to their procedures.

10.4.19

Notary or Ohio Civil Rights Commission Representative

Subscribed and sworn to before me on this 4 day of Oct 2019

| OHIO CIVIL RIGHTS COMMISSION CHARGE OF DISCRIMINATION EMPLOYMENT | Agency Use Only<br>☒ FEPA<br>☒ EEOC | CHARGE NUMBER: (Agency Use Only)<br>TOL72(40150)10042019<br>22A-2020-00051C |
|---|---|---|

### Page: 2

Krystal Sellers- Kominek v. City of Maumee-Maumee Police Division
Page 2

4. I believe that I have been unlawfully discriminated against with regard to discipline due to my sex in that:
   a. I am the only female patrolman on third shift.

   b. I was the object of adverse action and was disciplined on September 14, 2019, due to my sex.

   c. Others not of my protected class Austin McDermitt, male, are treated to a more lenient policy.

5. I believe that I have been unlawfully retaliated against with regard to harassment and disciplined due to statutorily protected activity in that:
   a. I filed an internal complaint of harassment to Respondent.

   b. Specific conditions of employment were imposed upon me. These include Paul LaPlonte said to me I'm small and a female and I'm going to have trouble gaining respect. Paul closely scrutinize my work; he pulls all my videos from traffic stops, verbally test me during roll call and ignores me and I was discipline on September 14, 2019, among other things.

   c. There is a causal connection between my participation in a protected activity and the alleged acts of the Respondent.

hxr

RECEIVED
OCT 0 4 2019

IA2

| I declare under penalty of perjury that I have read the above charge and that it is true to the best of my knowledge, information and belief. I will advise the agency(ies) if I change my address or telephone number and that I will cooperate fully with them in the processing of my charge in accordance to their procedures. | Notary or Ohio Civil Rights Commission Representative<br>Subscribed and sworn to before me on this  4  day of  Oct  20  19 |
|---|---|



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine
Commissioners: Lori Barreras, Chair | William Patmon, III | Dr. Carolyn Peters |Madhu Singh
Executive Director Angela Phelps-White

July 2, 2020                                          **Date Mailed: July 30, 2020**

Krystal Sellers-Kominek                              David H. Tullis II, Chief
8950 South River Road                                City of Maumee-Maumee Police Division
Waterville, OH 43566                                 109 East Dudley Street
                                                     Maumee, OH 43537

### LETTER OF DETERMINATION
Krystal Sellers-Kominek v. City of Maumee-Maumee Police Division
TOL72(40150)10042019/22A-2020-00051C

**FINDINGS OF FACT:**
Charging Party filed a charge of discrimination with the Ohio Civil Rights Commission alleging Respondent engaged in an unlawful discriminatory practice. All jurisdictional requirements for filing a charge have been met. Prior to the conclusion of the investigation, Charging Party requested to withdraw the charge to request a Notice of Right to Sue from the Equal Employment Opportunity Commission.

**DECISION:**
The Ohio Civil Rights Commission has entered into its record a finding of **WITHDRAWAL OF CHARGE – REQUEST A NOTICE OF RIGHT TO SUE**. The matter is **CLOSED**.

**NOTICE OF RIGHT TO PETITION FOR JUDICIAL REVIEW:**
A determination of the Commission that constitutes a Final Order is subject to judicial review, wherein the court reviews the contents of this letter and determines if there are sufficient factual findings supporting why the Commission did not issue a complaint. A petition for judicial review must be filed in the proper common pleas court within **THIRTY (30) days** of the date the Commission mailed this Final Order. The right to obtain judicial review and the mode and procedure thereof is set forth in Ohio Revised Code § 4112.06.

The judicial review process is not a means to reexamine the investigation or further pursue your allegations through the Commission. You may consult with an attorney for information on available options.

A Probable Cause finding is not a Final Order and is not subject to judicial review by a court. All other determinations of the Commission constitute a Final Order and are subject to judicial review by a court.

FOR THE COMMISSION,

*William E. Baskin, Jr.*

William E. Baskin, Jr., Toledo Regional Supervisor

WEB/sms



Krystal Sellers-Kominek v. City of Maumee-Maumee Police Division
TOL72(40150)10042019/22A-2020-00051C
Page 2

cc: **Representative for Respondent**
David M. Smigelski, Attorney at Law
Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Krystal Sellers-Kominek
     8950 S. River Road
     Waterville, OH 43566

From:  Indianapolis District Office
       101 West Ohio Street
       Suite 1900
       Indianapolis, IN 46204

☐ On behalf of person(s) aggrieved whose identity is
   CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 22A-2020-00051 | Jeremy A. Sells,<br>State & Local Coordinator | (463) 999-1161 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred __more than 2 years (3 years)__ before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Michelle Eisele*

**Michelle Eisele,**
**District Director**

September 15, 2020
*(Date Mailed)*

Enclosures(s)

cc:  HR Director
     CITY OF MAUMEE, MAUMEE POLICE DIVISION
     109 E. Dudley Street
     Maumee, OH 43537


EXHIBIT
E